# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NEVILLE SYLVESTER LESLIE,** | : | **CIVIL NO. 3:10-CV-1005** |
| | : | |
| **Plaintiff,** | : | **(Judge Conaboy)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **UNITED STATES OF AMERICA,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This case, which comes before the Court for consideration of a motion to dismiss filed by two Defendants who were added to this action by Leslie, without leave of court, 18 months after this litigation began, invites us to write yet another chapter in a twelve-year legal saga involving Neville Leslie, a Jamaican national, convicted drug trafficker, and immigration detainee.

Briefly, the background of this case is as follows:  In 1998 the Plaintiff, Neville Leslie, a Jamaican national, "was convicted by a beguiled guilty plea for conspiracy with the intent to distribute fifty (50) grams or more of cocaine bais [sic] 'crack'". (Doc. 1, ¶2)  Following his conviction on this drug trafficking charge, Leslie was sentenced to a 168-month term of imprisonment, a jail sentence which Leslie claims was subsequently reduced. (Id.)

According to Leslie, he completed this federal drug trafficking sentence in 2008, and was released from federal custody to an immigration detainer. (Id. ¶4.) This immigration detainer noted that Leslie, an alien convicted of drug trafficking, was subject to deportation as a result of this criminal conduct.   (Id.)   While these immigration proceedings were pending against Leslie, the Plaintiff was detained and housed by immigration officials in two county prisons in Pennsylvania, the Clinton County Prison and the York County Prison.   (Id. ¶¶4-20.)

From prison, Leslie launched a series of legal assaults upon this immigration action.   As part of this effort, Leslie filed a series of petitions for writ of habeas corpus, challenging the lawfulness of his detention.   Leslie v. Sabol, No. 03:09-CV-762 (M.D.Pa.); Leslie v. Holder, No. 03:11-CV-249 (M.D. Pa.)   These habeas corpus petitions have recently led to Leslie's release on bail from immigration custody.

In addition, on May 11, 2010, Leslie launched another *pro se* challenge to the conditions of his detention when he filed the instant civil rights complaint with this Court.   (Doc. 1)   In his first *pro se* complaint, Leslie named the United States, the York and Clinton County prisons, and numerous senior prison officials as Defendants. (Id.)   Leslie then recited the history of his criminal convictions which led to his immigration detention pending deportation at these facilities.   (Id.)

After setting forth this background, Leslie alleged in a summary fashion that immigration officials violated the Fifth Amendment to the United States Constitution by holding him pending deportation. (Id.) Leslie further asserted that local and federal officials were violating the Thirteenth Amendment's prohibition on involuntary servitude by instructing him to participate in prison work details while in custody. (Id.) Finally, Leslie claimed, in a summary manner, that prison officials were also violating his rights under the Eighth Amendment to be free from cruel and unusual punishment by "denie [sic] him medication and sometimes delay medical cair [sic] by not approveing [sic] when the Doctor priscribe [sic] the bases [sic] mediation which will help Claimant." (Id. ¶9.)[1] On the basis of these assertions, Leslie sought compensatory and punitive damages under both the United States Constitution and the Federal Tort Claims Act totaling $5,000,000, along with declaratory and injunctive relief, in the form of an order relieving him from what he describes as his "involuntary servitude" as an immigration detainee.

---

[1] With respect to this Eighth Amendment claim Leslie's complaint indicated that one of Leslie's primary medical concerns was that he was "suffering with this gas pain and have to berp [sic] and . . . one inmate is complaining that he is tired of hearing me pass gas . . . ." (Id. Ex. B.) In response to this specific complaint, prison officials did not deny Leslie care; they simply informed him that the specific anti-gas medication he seeks is not on the prison formulary. (Id.) Thus, the exhibits attached to Leslie's complaint highlighted a medical dispute between a prisoner and his jailers over the choice of medicine to curb flatulence.

The Defendants then moved to dismiss Leslie's *pro se* complaint. (Docs. 19 and 29) Construing Leslie's complaint as one which principally entailed Fifth Amendment and involuntary servitude claims, we filed a report and recommendation on October 6, 2010, which recommended that these motions to dismiss be granted. (Doc. 30) This report and recommendation was adopted by the District Court, over Leslie's objections, (Doc. 41), and Leslie appealed. (Doc. 43)

On appeal, the United States Court of Appeals for the Third Circuit affirmed the decision to dismiss Leslie's Fifth[2] and Thirteenth Amendment due process and involuntary servitude claims. (Doc. 46-1) The appellate court also affirmed the dismissal of Leslie's Eighth Amendment claims, which were premised on the failure to "provide him with a particular medication to treat his 'gas problem' because that medication was not on the prison's formulary." (Doc. 46-1, p.5) The appellate court, however, remanded this case for consideration of separate Eighth Amendment claims which Leslie appeared to raise; namely, claims that prison officials failed to treat Leslie for pancreatic pains, and placed him in close contact with tubercular prisoners. (Doc. 46-1,pp. 5-6.)

---

[2]The appellate court's decision held that this Fifth Amendment claim should be dismissed without prejudice. Leslie has not renewed this claim in his latest amended complaint.

Following this remand, on September 13, 2011, the district court entered an order directing Leslie to file an amended complaint limited to addressing only the specific claims remanded by the court of appeals, and referring this case to this court for further proceedings. (Doc. 47.) On October 3, 2011, Leslie filed this amended complaint. (Doc. 48.) In his amended complaint, Leslie named thirteen defendants: Physician assistants Toby and Catone at the York County Prison; the York County Prison; the United States of America; Warden Mary Sabol, York County Prison; Deputy Warden Doll, York County Prison; Deputy Warden Sterner, York County Prison; Donald Reihard, Solicitor, York County Prison; and the following personnel at the Clinton County Prison–Warden Duran,  Deputy Warden Motter, Supervisor Nurse Reeder, Nurse Rupert, and Correctional Officer "Hernandez 21." (Doc. 48.) Four of these defendants–Physician Assistants Toby and Catone, and Nurse Reeder and Rupert–were newly added to this case in Leslie's October 3, 2011 amended complaint. (Id.)  Like his original complaint, this amended complaint also contained a demand for a specific amount of unliquidated damages, $1,000,000, from each defendant. (Id.)

Upon the filing of this amended complaint, and a motion to dismiss the amended complaint, we filed a report and recommendation which recommended that a number of the defendants and claims set forth in this amended complaint be dismissed from this action. (Docs. 69 and 70.) Specifically, we recommended that this complaint be

dismissed with respect to the following defendants: The York County Prison; the United States of America; Warden Mary Sabol, York County Prison; Deputy Warden Doll, York County Prison; Deputy Warden Sterner, York County Prison; Donald Reihard, Solicitor, York County Prison; and the following personnel at the Clinton County Prison–Warden Duran,  Deputy Warden Motter, and Correctional Officer "Hernandez 21." (Id.) We also recommended that all claims brought under the Occupational Safety and Health Act, (OSHA), 29 U.S.C. §651, also be dismissed from this action. (Id.) On December 9, 2011, the district court entered a memorandum and order adopting these recommendations. (Doc. 74.)

While making these recommendations, we specifically reserved judgment as to whether the amended complaint properly named two new defendants, Nurse Rupert and Nurse Reeder at the Clinton County Prison, and stated claims against these newly named defendants.  As to these two medical defendants Leslie's amended complaint, in its current form, simply recites that in February of 2010:

> In the course of taking these antibiotics (prescribed by co-defendant Nurse Rupert), plaintiff started to feel pain in his pancreas on the left side of his stomach. Plaintiff has put in various "sick call" requests complaining about pain to the nurses at the prison. The nurses complained to were, Supervisor Nurse C. Reeder, Nurse Perry, Nurse Rupert, and Nurse Liter. Plaintiff's requests were not responded to for a period of three weeks.

(Doc. 48, p.2.)

Thus, as to defendants Reeder and Rupert, Leslie's amended complaint began by reciting that Rupert provided medical care to the plaintiff. ("In the course of taking these antibiotics(prescribed by co-defendant Nurse Rupert)".) The amended complaint then alleged that Leslie complained of pain to four nurses. According to the amended complaint, these concerns were not responded to for three weeks, a factual averment which implies that the complaints were then later responded to in some fashion, although Leslie's complaint does not describe what happened after this alleged three week delay. On the basis of these otherwise unadorned allegations, Leslie now seeks to hold defendants Rupert and Reeder personally liable for damages asserting that the nurses were deliberately indifferent to his serious medical needs.

These two defendants, who had been added by Leslie to this action in his amended complaint without any prior leave of court, have now also moved to dismiss this amended complaint. In their motion to dismiss defendants Rupert and Reeder launch a twofold attack on Leslie's complaint, arguing: (1) that Leslie added these defendants to this action in a procedurally irregular fashion after some 18 months of litigation, in violation of Rule 15 of the Federal Rules of Civil Procedure; and (2) that Leslie's amended complaint fails to state a claim of deliberate indifference to serious medical needs by either of these two named defendants.

This motion to dismiss has been fully briefed by the parties, (Docs. 78, 79, and 80), and is now ripe for resolution. For the reasons set forth below, it is recommended

that this motion to dismiss be granted, without prejudice to permitting Leslie one final opportunity to properly seek leave of court to amend his complaint to add these new parties and claims.

## II.    Discussion

### A.    Leslie has Failed to Abide By the Procedural and Substantive Standards Which Apply to Amendment of Complaints

Leslie's efforts to unilaterally amend this complaint 18 months after this litigation raises both procedural and substantive concerns. The procedural concerns stem from the fact that Rule 15 of the Federal Rules of Civil Procedure, which governs the amendment of pleadings, requires leave of court before parties are added to a case at this late date. These procedural concerns, in turn, are heightened by substantive considerations regarding the exacting standard of pleading Leslie must meet under Rule 12(b)(6) of the Federal Rules of Civil Procedure when alleging an Eighth Amendment violation against prison medical staff arising out of their care and treatment of a prisoner.

In this case, we believe that these procedural and substantive concerns, taken in concert, call for dismissal of Leslie's amended complaint, in its current form, as to defendants Rupert and Reeder, since the process used to amend this complaint was inappropriate, and the substance of the amended complaint does not comport with the requirements of federal law.

At the outset, we believe that the procedure used by Leslie to unilaterally add these defendants to this lawsuit violates Rule 15 of the Federal Rules of Civil Procedure.  Rule 15(a) of the Federal Rules of Civil Procedure provides as follows:

**(a) Amendments Before Trial**

**(1)** ***Amending as a Matter of Course.*** A party may amend its pleading once as a matter of course within:

    **(A)** 21 days after serving it, or

    **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) . . . .

**(2)** ***Other Amendments.*** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).

In this case the plaintiff had not sought leave of court to file an amended complaint which added new parties and claims to this case, and had not filed the amended complaint within the time limits prescribed by Rule 15 for amendment of complaints without leave of court. Therefore, prior leave of court is needed before Leslie may add new parties and claims to this lawsuit. Decisions regarding amendment of pleadings rest in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion.  See e.g., Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267

(3d Cir. 2001). That discretion, however, is governed by certain basic principles, principles that are embodied in Rule 15 of the Federal Rules of Civil Procedure.  In this regard, while Rule 15 provides that leave to amend should be freely given when justice requires, the district court still retains broad discretion to deny a motion to amend, Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001), and may deny a request:

> if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party. Adams, 739 F.2d at 864. Delay becomes "undue," and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend. Cureton, 252 F.3d at 273 (citing Adams, 739 F.2d at 868; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir.1993)). Thus, our review of the question of undue delay . . . will "focus on the movant's reasons for not amending sooner," Cureton, 252 F.3d at 273, and we will balance these reasons against the burden of delay on the District Court. Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir.1988).

Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266.

Furthermore, "'[a]mong the grounds that could justify a denial of leave to amend are undue delay, . . ., dilatory motive, prejudice, and futility.' In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ('Burlington'); Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir.1993). 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington, 114 F.3d at 1434." Shane v. Fauver,  213 F.3d 113, 115 (3d Cir. 2000).

Moreover, a party seeking to amend pleadings must act in a diligent fashion. Thus, for example, "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them. Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir.1998)." Krantz v. Prudential Investments Fund Management LLC, 305 F.3d 140, 144 (3d Cir. 2002).

Finally, in every instance, the exercise of this discretion must be guided by the animating principle behind Rule 15, which is "to make pleadings a means to achieve an orderly and fair administration of justice." Griffin v. County School Bd. of Prince Edward County, 377 U.S. 218, 227 (1964). Therefore, in considering a motion to amend we must always "appl[y] Rule 15 . . . in a manner aimed at securing the just, speedy and inexpensive determination of every action." Masimo Corp. v. Philips Elec. N. Am. Corp., 2010 WL 1609899, at *1 (D.Del. Apr.20, 2010) (quoting Medeva Pharma Ltd. v. Am. Home Prods. Corp., 201 F.R.D. 103, 104 n. 3 (D.Del.2001))." CMR D.N. Corp. v. City Of Philadelphia, No. 07-1045, 2011 WL 857294, *4 (E.D.Pa. March 11, 2011)(Stengel, J.).

In this case, Leslie has not sought leave of court to add these defendants to this action, as he is required to do under Rule 15. Moreover, Leslie has provided no explanation for his 18-month delay in naming these defendants, as he is also required

to do when seeking leave to amend in this fashion. These procedural shortcomings caution against simply permitting Leslie to unilaterally amend his complaint in this manner at this time.

Furthermore, allowing Leslie to amend his complaint at this time in the manner which he proposes would also violate Rule 15's prohibition against permitting amendments which are futile. In this context, "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington, 114 F.3d at 1434." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). In this case, the defendants persuasively argue that, in its current form, Leslie's amended complaint as to defendants Reeder and Rupert fails to state a claim upon which relief may be granted and therefore, this amended complaint is futile as to these defendants.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have

> seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.   Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).   However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).   Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."   Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."   Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint

states facts upon which relief can be granted when ruling on a motion to dismiss.  In

Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that,

when considering a motion to dismiss, a court should "begin by identifying pleadings

that, because they are no more than conclusions, are not entitled to the assumption of

truth."  Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice."  Id. at 1949.  Rather, in conducting a review of the adequacy of complaint,

the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than

mere legal labels and conclusions.  Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but

may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that the allegations which Leslie makes in his amended complaint against defendants Rupert and Reeder, in their current form, do not state a valid Eighth Amendment claim of deliberate indifference to serious medical needs.

Leslie faces an exacting burden in advancing this Eighth Amendment claim against prison health care providers. To sustain such a claim, Leslie must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are

deliberately indifferent to an inmate's serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in a prison setting, Leslie is required to point to evidence demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990). However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never

deliberate indifference.". <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment

claims that are based upon the level of professional care that an inmate received; <u>see,

e.g.</u>, <u>Ham v. Greer</u>, 269 F. App'x 149 (3d Cir. 2008); <u>James v. Dep't of Corrections</u>,

230 F. App'x 195 (3d Cir. 2007); <u>Gillespie v. Hogan</u>, 182 F. App'x 103 (3d Cir.

2006), particularly where it can be shown that significant medical services were

provided to the inmate but the prisoner is dissatisfied with the outcome of these

services. Furthermore, it is well-settled that an inmate's dissatisfaction with a course

of medical treatment, standing alone, does not give rise to a viable Eighth Amendment

claim. <u>See</u> <u>Taylor v. Norris</u>, 36 F. App'x 228, 229 (8th Cir.2002); <u>Abdul-Wadood v.

Nathan</u>, 91 F.3d 1023, 1024-35 (7th Cir.1996). Therefore, where a dispute in essence

entails no more than a disagreement between an inmate and doctors over alternate

treatment plans, the inmate's complaint will fail as constitutional claims under § 1983

since "the exercise by a doctor of his professional judgment is never deliberate

indifference." <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations

omitted).

Here, as to defendants Reeder and Rupert, Leslie's amended complaint simply

states that: "In the course of taking these antibiotics (prescribed by co-defendant Nurse

Rupert), plaintiff started to feel pain in his pancreas on the left side of his stomach.

Plaintiff has put in various 'sick call' requests complaining about pain to the nurses

at the prison. The nurses complained to were, Supervisor Nurse C. Reeder, Nurse Perry, Nurse Rupert, and Nurse Liter. Plaintiff's requests were not responded to for a period of three weeks." (Doc. 48, p.2.) Thus, Leslie's amended complaint affirmatively recites that he received medical care from defendant Rupert, who provided him antibiotics for some unidentified medical problem. While he then alleges that he then made complaints of pain, those complaints were apparently directed to different four nurses over three weeks, and it is not at all clear what caused Leslie to deem only two of these four nurses deliberately indifferent to his needs. Furthermore, Leslie's amended complaint, which recites that the complaints 'were not responded to for a period of three weeks," implies that the complaints were addressed after this three week delay, but Leslie does not explain what further steps were taken by medical personnel to address his concerns and the exhibits attached to Leslie's amended complaint further confuse this claim, since those exhibits do not refer to these nurses at all, but rather complains about the care provided by an otherwise unnamed physician assistant.

In this setting, where Leslie must allege facts that would permit a finding of deliberate indifference to his serious medical needs, his current factual recital–which simply indicates that Nurse Rupert provided him care, and only recites that there was a three week delay in following up on his complaints that were made to numerous staff, many of whom are not named as defendants–is not sufficiently detailed, or clear,

to permit this particular claim to proceed forward without the recitation of further well-pleaded facts. Therefore, we should dismiss Leslie's complaint as to these two defendants, in its current form, but do so without prejudice to permitting Leslie to endeavor one final time to try clearly articulate a constitutional claim under the applicable legal standards set forth in this report and recommendation.

## B.    Leslie's Claim for a Specific Sum of Unliquidated Damages Should Be Stricken

In addition, we note that the Court should also strike the claim for a specific sum of unliquidated damages, $1,000,000,  from this *pro se* complaint. In this regard, Rule 12(f) of the Federal Rules of Civil Procedure imposes a duty on the Court to review pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter. Fed. R. Civ. P. 12(f). Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance. Singh v. Superintending School Committee of the City of Portland, 593 F. Supp. 1315 (D. Me. 1984). In this case, Leslie's claim for a specified amount of unliquidated damages violates Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief *but shall not claim any specific sum where unliquidated damages are involved.* The short plain

statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since this prayer for relief violates Local Rule 8.1 by specifying a particular amount of unliquidated damages, that specific dollar claim will be stricken from the complaint without prejudice to the Plaintiff arguing in any subsequent trial or hearing on the merits for any appropriate amount of damages supported by the evidence

### C.      These Defendants Should be Dismissed Without Prejudice

In sum, Leslie must seek leave of court before adding claims and defendants to this action. In seeking such leave, he should explain why these defendants were not previously named in this case, should justify the delay in naming these parties, and should more clearly articulate the basis for his claim that these individuals were deliberately indifferent to his medical needs. Since Leslie's amended complaint advances these claims in a procedurally inappropriate manner and in a substantively flawed fashion, it is recommended that these defendants be dismissed from this action.

In making these recommendations we recognize that *pro se* plaintiffs in civil rights cases often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir.

2004). Here, we recommend that the plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file a motion to amend his complaint, along with a properly detailed proposed amended complaint relating to defendants Reeder and Rupert. Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's amended complaint be dismissed as to defendants Reeder and Rupert, but without prejudice to providing the plaintiff one final opportunity to seek leave of court to file a proper amended complaint as to these defendants, and amended complaint which corrects the defects cited in this report and complies with federal pleading standards, provided that the plaintiff acts within 20 days of any dismissal order.

Finally, the clerk is directed to update Leslie's address in this case to reflect the address now prescribed for Leslie as a condition of his release in <u>Leslie v. Holder</u>, No. 03:11-CV-249 (M.D. Pa.).

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this __5th__ day of April, 2012.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge
